## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| IN RE: | CASE NO: 17-11862 |
| ELIZABETH ANN GLOVER AND THOMAS BENJAMIN GLOVER, | CHAPTER 13 |
| Debtor(s) | |

| | |
|---|---|
| Federal National Mortgage Association<br>      Movant, | |
| v.<br>ELIZABETH ANN GLOVER AND THOMAS BENJAMIN GLOVER,<br>Debtor(s)<br>Melissa J. Davey, Trustee | CONTESTED MATTER |
| Respondents, | |

### MOTION TO APPROVE LOAN MODIFICATION

**COMES NOW** Federal National Mortgage Association ("Movant"), and through Counsel files this "Motion to Approve Loan Modification," showing this Honorable Court the following:

1.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1334, 151 and 157.

2.      This Court is the proper venue for this matter pursuant to 28 U.S.C. Section 1409.

3.      This matter is a core proceeding as defined in 28 U.S.C. Section 157(b)(2)(D).

4.      The Debtors filed the petition for relief in the above-styled Chapter 13 case on August 31, 2017.

5.      In their Chapter 13 schedules, the Debtors list an interest in real property located a 199 Coyote Trail, Waco, GA 30182.

6.      The Debtors and Movant, the servicer for the mortgage lender, have reached an agreement to modify the loan in accordance with the attached loan modification documents, which are included in this motion as Exhibit A. The new principal balance of the loan will be $80,095.26 with a reduced interest rate of 4.000%, with the first payment under the loan modification being due on December 1, 2017.

7.      The Movant believes that the loan modification is in the best interests of the estate and Debtors' creditors, and that such a modification will assist in the effectuation of the Debtor's financial reorganization.

**WHEREFORE**, Movant prays:

1.      That this Motion be filed, read and considered;

2.      That this Motion be granted; and,

3.      That this Court grant such other and further relief as is just and proper.

This 20th day of December, 2017

Respectfully submitted,

Brock and Scott, PLLC

/s/ Mallory Velten
Mallory Velten (GA. Bar No. 726971)
Attorney for Movant
Brock & Scott, PLLC
4360 Chamblee Dunwoody Rd. Suite 310
Atlanta, GA 30341
Ph: 404-789-2661
Fax: 404-294-0919
bankruptcy@brockandscott.com

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### NEWNAN DIVISION

| | |
|---|---|
| IN RE: | CASE NO: 17-11862 |
| ELIZABETH ANN GLOVER AND THOMAS BENJAMIN GLOVER, | CHAPTER 13 |
| Debtor(s) | |

| | |
|---|---|
| Federal National Mortgage Association<br>        Movant, | |
| v.<br>ELIZABETH ANN GLOVER AND THOMAS BENJAMIN GLOVER,<br>Debtor(s)<br>Melissa J. Davey, Trustee | CONTESTED MATTER |
| Respondents, | |

## NOTICE OF ASSIGNMENT OF HEARING

**PLEASE TAKE NOTICE** that Federal National Mortgage Association, Inc., has filed a motion to approve loan modification and related papers with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the motion to approve loan modification at Second Floor Courtroom, U.S. Courthouse, 18 Greenville Street, Newnan, Georgia at 9:20 AM on January 18, 2018.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion to approve loan modification cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of

filing the motion and agrees to a hearing on the earliest possible date. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

This 20th day of December, 2017

                                Respectfully submitted,

                                Brock and Scott, PLLC


                                /s/ Mallory Velten
                                Mallory Velten (GA. Bar No. 726971)
                                Attorney for Movant
                                Brock & Scott, PLLC
                                4360 Chamblee Dunwoody Rd. Suite 310
                                Atlanta, GA 30341
                                Ph: 404-789-2661
                                Fax: 404-294-0919
                                bankruptcy@brockandscott.com

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| IN RE: | CASE NO: 17-11862 |
| ELIZABETH ANN GLOVER AND THOMAS BENJAMIN GLOVER, | CHAPTER 13 |
| Debtor(s) | |

Federal National Mortgage Association
    Movant,

v.

ELIZABETH ANN GLOVER AND THOMAS
BENJAMIN GLOVER,                                        CONTESTED MATTER
Debtor(s)
Melissa J. Davey, Trustee

    Respondents,

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing *Motion to Approve Loan Modification and Notice of Hearing* via electronic service if applicable or by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Elizabeth Ann Glover
Thomas Benjamin Glover
199 Coyote Trail
Waco, GA 30182

John T. Dufour
527 Newnan Street
Carrollton, GA 30117

Melissa J. Davey
Suite 200
260 Peachtree Street NW
Atlanta, GA 30303

                Brock and Scott, PLLC


                /s/ Mallory Velten
                Mallory Velten (GA. Bar No. 726971)
                Attorney for Movant

After Recording, Return
To:_____

_____
_____
_____
_____ [Space Above This Line For Recording Data] _____
Collateral Address: 199 COYOTE TRL, WACO GA 30182-2000

Loan Number: ███████ Prepared by Servicer: Seterus, Inc., ████████████ ████████
█ ███████████████ Investor Loan Number: █████████

*L790A0.1*

# LOAN MODIFICATION AGREEMENT
## {Providing for Fixed Interest Ratè)

This Loan Modification Agreement ("Agreement"), made this 20th day of October, 2017, between
GLOVER, THOMAS B ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National
Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
November 14, 2005, and the Original unpaid principal balance: $84,000.00, and the Pre-Modification
Principal Balance: $68,614.13, and recorded in Book or Liber 825, at page(s) 253, Instrument Number
na, of the County Records of Haralson and (2) the Note, bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property," located at
      199 COYOTE TRL, WACO GA 30182-2000,

the real property described being set forth as follows:
      Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of December 01, 2017, the amount payable under the Note and the Security Instrument (the
   "Unpaid Principal Balance") is U.S. $80,095.26, consisting of the unpaid amount(s) loaned to
   Borrower by Lender plus any interest and other amounts capitalized.

GLOVER, THOMAS B   ███████████
LOAN MODIFICATION AGREEMENT

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from November 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $334.75, beginning on the 1st day of December, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on November 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $259.20 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.

   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing December 01, 2017.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____          _____

Seterus, Inc.   Authorized Signer                                    Date

_____

Witness for Lender-

_____

Witness for Lender -

_____          _____

GLOVER, THOMAS B                                            11/13/2017

199 COYOTE TRL, WACO, GA 30182                               Date

_____

Witness -
(signature & printed name required)

_____

Witness -
(signature & printed name required)

**Grantor Signature Only: Signing this Agreement is only an acknowledgement and does not
obligate the undersigned to repay the debt.**

_____          _____

GLOVER, ELIZABETH A.                                        11/13/17

                                                            Date

_____

Witness -
(signature & printed name required)

_____

Witness-
(signature & printed name required)

GLOVER, THOMAS B
LOAN MODIFICATION AGREEMENT                                 Page 6 of 9

_____ [Space Below This Line For Acknowledgments] _____

State of **GEORGIA**
County of _____Carroll_____ )
                                )

This instrument was acknowledged before me this ___13th___ day of
_____November_____, __2017__ by **GLOVER, THOMAS B.**


_____ Personally Known

_____✓_____ Produced Identification

Type and # of ID _GA 025423387S_

Robin M. Smith
Signature of Notary

Robin M. Smith
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: __10/19/2020__

State of GEORGIA

County of _Carroll_                    )

This instrument was acknowledged before me this _13th_ day of
_November_ , _2017_ by **GLOVER, ELIZABETH A.**

_____ Personally Known

_____✓_____ Produced Identification

Type and # of ID _GA 050511493_

_Robin M Smith_
Signature of Notary

_Robin M. Smith_
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: _10/19/2020_

State of Oregon

County of Washington

On_____, before me,_____, personally appeared_____,
**Authorized Signer of Seterus Inc.** who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
State of Oregon

My commission expires on:

Commission No.

GLOVER, THOMAS B  ████████
LOAN MODIFICATION AGREEMENT                                    Page 8 of 9

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 239 OF THE 7TH DISTRICT, HARALSON COUNTY, GEORGIA, BEING LOT 23, BEAVER RUN, PHASE II, SECTION 1, AS PER PLAT RECORDED IN PLAT BOOK 16, PAGE 83, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF HARALSON COUNTY, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

After Recording, Return
To:_____
_____
_____
_____

————————————————— [Space Above This Line For Recording Data] ———————————
Collateral Address: 199 COYOTE TRL, WACO GA 30182-2000

Loan Number:█████████ Prepared by Servicer: Seterus, Inc., ████████████
████████████ Investor Loan Number: █████████

L790A0.1

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 20th day of October, 2017, between
GLOVER, THOMAS B ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National
Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
November 14, 2005, and the Original unpaid principal balance: $84,000.00, and the Pre-Modification
Principal Balance: $68,614.13, and recorded in Book or Liber 825, at page(s) 253, Instrument Number
na, of the County Records of Haralson and (2) the Note, bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property," located at
        199 COYOTE TRL, WACO GA 30182-2000,

the real property described being set forth as follows:
        Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of December 01, 2017, the amount payable under the Note and the Security Instrument (the
    "Unpaid Principal Balance") is U.S. $80,095.26, consisting of the unpaid amount(s) loaned to
    Borrower by Lender plus any interest and other amounts capitalized.

GLOVER, THOMAS B   ████████████
LOAN MODIFICATION AGREEMENT                                                       Page 1 of 9

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from November 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $334.75, beginning on the 1st day of December, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on November 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $259.20 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.

   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing December 01, 2017.

   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____      _____
Seterus, Inc.   Authorized Signer                                             Date

_____
Witness for Lender-

_____
Witness for Lender -

_____      _____
GLOVER, THOMAS B                                                              11/13/2017
199 COYOTE TRL, WACO, GA 30182                                               Date

_____
Witness -
(signature & printed name required)

_____
Witness -
(signature & printed name required)


*Grantor Signature Only: Signing this Agreement is only an acknowledgement and does not obligate the undersigned to repay the debt.*

_____      _____
GLOVER, ELIZABETH A.                                                         11/13/17
                                                                             Date

_____
Witness -
(signature & printed name required)

_____
Witness -
(signature & printed name required)


GLOVER, THOMAS B   ▮▮▮▮▮▮▮▮
LOAN MODIFICATION AGREEMENT                                   Page 6 of 9

_____ [Space Below This Line For Acknowledgments] _____

State of **GEORGIA**                                )
County of _Carroll_____    )

This instrument was acknowledged before me this ___13th___ day of
____November_____, _2017_____ by **GLOVER, THOMAS B.**

_____ Personally Known

_____ Produced Identification

Type and # of ID _GA 025423875_____

_Robin M. Smith_____
Signature of Notary

_Robin M. Smith_____
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

My Commission Expires: _10|19|2030____

State of **GEORGIA**                                    )

County of _Carroll_                          )

This instrument was acknowledged before me this _13th_ day of
_November_ , _2017_ by **GLOVER**, ELIZABETH A.

_____ Personally Known

_____ Produced Identification

Type and # of ID _GA 050511493_

_Robin M. Smith_
Signature of Notary

_Robin M. Smith_
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: _10/19/20__

State of Oregon

County of Washington

On_____, before me,_____, personally appeared_____,
**Authorized Signer of Seterus Inc.** who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Notary Public
State of Oregon

My commission expires on:

Commission No.

GLOVER, THOMAS B ██████████
LOAN MODIFICATION AGREEMENT                                              Page 8 of 9

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 239 OF THE 7TH DISTRICT,
HARALSON COUNTY, GEORGIA, BEING LOT 23, BEAVER RUN, PHASE II, SECTION 1, AS PER PLAT
RECORDED IN PLAT BOOK 16, PAGE 83, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF
HARALSON COUNTY, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE
A PART OF THIS DESCRIPTION.

After Recording, Return
To:_____

_____
_____
_____

_____ [Space Above This Line For Recording Data] _____

Collateral Address: 199 COYOTE TRL, WACO GA 30182-2000

Loan Number: ███████ Prepared by Servicer: Seterus, Inc., ████████████  ████████

█████████████  Investor Loan Number: ██████████

*L790A0.1*

# LOAN MODIFICATION AGREEMENT
### {Providing for Fixed Interest Ratè)

This Loan Modification Agreement ("Agreement"), made this 20th day of October, 2017, between GLOVER, THOMAS B ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated November 14, 2005, and the Original unpaid principal balance: $84,000.00, and the Pre-Modification Principal Balance: $68,614.13, and recorded in Book or Liber 825, at page(s) 253, Instrument Number na, of the County Records of Haralson and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

     199 COYOTE TRL, WACO GA 30182-2000,

the real property described being set forth as follows:
     Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of December 01, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $80,095.26, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

GLOVER, THOMAS B  ████████████
LOAN MODIFICATION AGREEMENT

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from November 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $334.75, beginning on the 1st day of December, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on November 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $259.20 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.

   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing December 01, 2017.

   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____        _____
Seterus, Inc.   Authorized Signer                          Date

_____
Witness for Lender-

_____
Witness for Lender -


_____        11/13/2017
GLOVER, THOMAS B                                         Date
199 COYOTE TRL, WACO, GA 30182

_____
Witness -
(signature & printed name required)
_____
Witness -
(signature & printed name required)


**Grantor Signature Only: Signing this Agreement is only an acknowledgement and does not obligate the undersigned to repay the debt.**
_____        11/13/17
GLOVER, ELIZABETH A.                                    Date

_____
Witness -
(signature & printed name required)
_____
Witness-
(signature & printed name required)


GLOVER, THOMAS B   ███████
LOAN MODIFICATION AGREEMENT                              Page 6 of 9

_____ [Space Below This Line For Acknowledgments] _____

State of **GEORGIA**
County of _____Carroll_____ )
                              )

This instrument was acknowledged before me this _____13th_____ day of
_____November_____ , _____2017_____ by **GLOVER, THOMAS B.**

_____ Personally Known

_____✓_____ Produced Identification

Type and # of ID _____GA 025423875_____

_____Robin M Smith_____
Signature of Notary

_____Robin M Smith_____
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(seal)

My Commission Expires: _____10|19|2020_____

*(notary seal: ROBIN M SMITH, NOTARY PUBLIC, CARROLL COUNTY, GEORGIA, MY COMMISSION EXPIRES OCTOBER 19, 2020)*

State of GEORGIA

County of _____Carroll_____                    )

This instrument was acknowledged before me this _13th_ day of
_____November_____, _2017_ by **GLOVER, ELIZABETH A.**

_____ Personally Known

_____✓_____ Produced Identification

Type and # of ID **GA 050511493**

_Robin M Smith_
Signature of Notary

_Robin M. Smith_
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: _10/19/2020_

State of Oregon

County of Washington

On_____, before me,_____, personally appeared_____,
**Authorized Signer of Seterus Inc.** who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
State of Oregon

My commission expires on:

Commission No.

GLOVER, THOMAS B ███████████
LOAN MODIFICATION AGREEMENT                                        Page 8 of 9

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 239 OF THE 7TH DISTRICT,
HARALSON COUNTY, GEORGIA, BEING LOT 23, BEAVER RUN, PHASE II, SECTION 1, AS PER PLAT
RECORDED IN PLAT BOOK 16, PAGE 83, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF
HARALSON COUNTY, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE
A PART OF THIS DESCRIPTION.

GLOVER, THOMAS B ▮▮▮▮▮▮▮▮▮▮
LOAN MODIFICATION AGREEMENT

Page 9 of 9

After Recording, Return
To:_____

_____

_____

_____

——————————————— [Space Above This Line For Recording Data] ———————————————
Collateral Address: 199 COYOTE TRL, WACO GA 30182-2000

Loan Number:█████████ Prepared by Servicer: Seterus, Inc., ███████████
████████████████ Investor Loan Number: ████████

L790A0.1

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 20th day of October, 2017, between
GLOVER, THOMAS B ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National
Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
November 14, 2005, and the Original unpaid principal balance: $84,000.00, and the Pre-Modification
Principal Balance: $68,614.13, and recorded in Book or Liber 825, at page(s) 253, Instrument Number
na, of the County Records of Haralson and (2) the Note, bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property," located at
    199 COYOTE TRL, WACO GA 30182-2000,

the real property described being set forth as follows:
    Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of December 01, 2017, the amount payable under the Note and the Security Instrument (the
   "Unpaid Principal Balance") is U.S. $80,095.26, consisting of the unpaid amount(s) loaned to
   Borrower by Lender plus any interest and other amounts capitalized.

GLOVER, THOMAS B ███████████
LOAN MODIFICATION AGREEMENT

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.000%, from November 01, 2017. Borrower promises to make monthly payments of principal and interest of U.S. $334.75, beginning on the 1st day of December, 2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.000% will remain in effect until principal and interest are paid in full. If on November 01, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $259.20 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment. This includes private mortgage insurance (PMI) premiums on the Loan, if applicable, and may increase as a result of the Unpaid Principal Balance, which will result in a higher total monthly payment.

   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing December 01, 2017.

   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.

   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph 1 above:

GLOVER, THOMAS B
LOAN MODIFICATION AGREEMENT

(a) All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b) All terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

(a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

(b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs, and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower will make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) Borrower will execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake, or omission), if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect, upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect, and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, if Borrower obtains a discharge of the debt in bankruptcy in the future, nothing in this Agreement shall be construed as an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender, on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums, in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining financial assistance, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

In Witness Whereof, the Servicer and I have executed this Agreement.

_____     _____
Seterus, Inc.   Authorized Signer                                              Date

_____
Witness for Lender-

_____
Witness for Lender -

_____     _____
GLOVER, THOMAS B                                                                11/13/2017
199 COYOTE TRL, WACO, GA 30182                                              Date

_____
Witness -
(signature & printed name required)

_____
Witness -
(signature & printed name required)

***Grantor Signature Only: Signing this Agreement is only an acknowledgement and does not
obligate the undersigned to repay the debt.***

_____     _____
GLOVER, ELIZABETH A.                                                            11/13/17
                                                                           Date

_____
Witness -
(signature & printed name required)

_____
Witness -
(signature & printed name required)

GLOVER, THOMAS B ██████████
LOAN MODIFICATION AGREEMENT                                              Page 6 of 9

_____ [Space Below This Line For Acknowledgments] _____

State of **GEORGIA**                                    )
County of ___Carroll_____                        )

This instrument was acknowledged before me this ___13th___ day of
_____November_____ , __2017___ by **GLOVER, THOMAS B.**


_____ Personally Known

_____✓_____ Produced Identification

Type and # of ID __GA 025423875_____

_Robin M Smith_____
Signature of Notary

_Robin M. Smith_____
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

Commission Expires: __10 | 19 | 2030____

State of **GEORGIA**                                    )

County of _Carroll_                                   )

This instrument was acknowledged before me this ___13th___ day of
_November_ , ___2017___ by **GLOVER**, ELIZABETH A.

_____ Personally Known

___✓___ Produced Identification

Type and # of ID _GA 050511493_

_Robin M. Smith_
Signature of Notary

_Robin M. Smith_
Name of Notary Typed, Stamped, or Printed
Notary Public, State of GEORGIA

(Seal)

My Commission Expires: _10/19/20__

State of Oregon

County of Washington

On_____, before me,_____, personally appeared_____,
**Authorized Signer of Seterus Inc.** who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Notary Public
State of Oregon

My commission expires on:

Commission No.

GLOVER, THOMAS B ███████
LOAN MODIFICATION AGREEMENT                                                          Page 8 of 9

Exhibit A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 239 OF THE 7TH DISTRICT,
HARALSON COUNTY, GEORGIA, BEING LOT 23, BEAVER RUN, PHASE II, SECTION 1, AS PER PLAT
RECORDED IN PLAT BOOK 16, PAGE 83, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF
HARALSON COUNTY, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE
A PART OF THIS DESCRIPTION.

GLOVER, THOMAS B
LOAN MODIFICATION AGREEMENT